Loring, J.:
Upon the hearing of the above-entitled cause, the court found the following facts:
1. That on the 27th of May, 1861, the claimant, John E. Reeside, was a contractor for carrying the mail on the several mail routes set forth in the petition, upon a contract for each route, made between him and the United States, which expired on the 30th June, 1862. A copy of the contract for route No. 7812, is hereto annexed, and the other contracts were similar, except as to route, piice, and schedule.
2. The prices on the several routes were as follows :
On route No. 7560, $1,500 per year.
On route No. 7574, $4,218 per year.
On route No. 7812, $11,970 per year.
On route No. 8240, $12,000 per year.
On route No. 7812, $35,880 per year.
31 c c
*482 3. That the claimant has been paid in full on each of said routes up to the first day of June, 1861.
4. That on the 27th of May, 1861, the Postmaster General issued the following order :
“Post Office Department,
“ Washington, May 27, 1861.
“ All postal service in the States of Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Arkansas, and Texas, will be suspended from and after the 31st instant.
“ Letters for offices temporarily closed by this order will be forwarded to the dead letter office, except those for Western Virginia, which will be sent to Wheeling.
“ M. BLAIR, Postmaster General.”
The order suspending the service on route 7560 is as follows :
“ Suspend service, until further ordered, from and after May 31, 1861, (per Postmaster General’s printed notice of this date, acting under law of Congress of February 28, 1861.”)
Dated May 28, 1861.
And the same order is attached to routes 7574, 7812, 7842, and 8240.
5. That no part of the stage property was removed by the claimant from the mail routes, and in the spring of 1861 he requested the Postmaster General to annul his contracts. This was refused, and the •claimant was informed by the Postmaster General that he would be held responsible and be ordered to renew the service whenever in the opinion of the Postmaster General it should be safe to do so.
6. That the claimant resided in Washington, District of Columbia, in May, 1861, that he has since resided there; thatit would have required twenty days to have gone to Arkansas from Washington and disposed of the claimant’s stage property on those routes, and no special notice was ever served upon him of the discontinuance of the mail routes specified in his said contracts.
7. That early in 1861 'the States of Louisiana and Mississippi had passed ordinances of secession, and had joined with other seceeding States in setting up a provisional central government in hostility to the government of the United States; that Arkansas was admitted into this rebel confederacy on the 21st May, 1861; and that from and after the proclamation of the President of the United States, on the 15th of April, 1861, a state of actual war existed Between the United States and the States setting up this provisional government, and in which
¡..these contracts were to be executed; that all payments on said con *483 tracts for the unexpired terms thereof, from May 31, 1861, though ¡requested, have been refused to him by the defendants.
And upon the facts stated the court were equally divided in opinion as to the claimant’s right to recover, and thereupon his petition was dismissed.